No. 3692

Second Circuit

## DIGGS v. THE BROWN PAPER MILL CO., INC.

(December 31, 1929.   Opinion and Decree.)
(January 31, 1930.   Rehearing Refused.)

Stubbs & Thompson, of Monroe, attorneys for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

REYNOLDS, J. Plaintiff sued defendant, under the Workmen's Compensation Act, for $18 a week, for 400 weeks, beginning July 29, 1924, with legal interest on each installment from its maturity, less 123 payments of $18 each, received by him between July 29, 1924, and November 20, 1926, with legal interest on each payment from the time it was made, as compensation for alleged permanent total disability to do work of a reasonable character said to have resulted from an accidental fall by him from a ladder to a concrete floor in the course of his employment by defendant on July 22, 1924, which broke and mangled his left foot and ankle and injured his left hip and his back.

Defendant admitted the employment and accident but denied that plaintiff was injured to the extent alleged or that he was permanently or totally disabled and denied that he was incapacitated to do work of a reasonable character, and alleged that only his foot was injured and that all the compensation he was entitled to therefor was $18 a week for 125 weeks and that it had paid him such compensation for 123 weeks and had tendered him $36 as the compensation for the two other weeks and he had refused to accept it.

On these issues the case was tried and judgment was rendered in favor of plaintiff against defendant for $18 per week during the period of total disability from July 29, 1924, to November 26, 1926, and in the further sum of $16.38 per week, being 40 per cent of the weekly wages of plaintiff, on the basis of permanent partial disability, for the period beginning November 26, 1926, and continuing for the additional period of 178 weeks thereafter, with interest at the legal rate on the weekly installments, beginning November 27, 1926, and on weekly installments thereafter from the respective dates the same became due theretofore and will become due hereafter, until paid; subject to credits of $18 per week paid by defendant for a period of 125 weeks, beginning July 29, 1924.

From this judgment defendant appealed. Plaintiff did not appeal nor did he answer defendant's appeal.

#### OPINION

The cause of action arose while Act No. 43 of 1922 was in force, and defendant earnestly contends that plaintiff was entitled, at most, to 60 per cent of wages during 125 weeks, as for the loss of a foot (section 8, subsection 1, clause (d)), and cites many cases in support of its contention, which, however, are inapplicable except on that theory.

Plaintiff contended that his hip and back also were injured and that in consequence

he was permanently totally disabled to do work of a reasonable character. The lower court awarded him compensation on the basis of temporary total disability from the time of the accident to November 26, 1926, and on the basis of permanent partial disability from the latter date; and the questions for our determination are, were plaintiff's hip and back also injured in the accident? And was he at the time of the trial permanently partially disabled in consequence to do work of a reasonable character?

Plaintiff frankly admits, in his testimony, that, while he was undergoing treatment for the injury to his foot, he did not complain of an injury to his hip or back; and defendant insists that this proves that neither his back nor hip was injured.

Defendant's contention is entitled to and has received proper consideration; but we think plaintiff explains this silence, and we think that in the light of it there was nothing inconsistent between the existence of the injury to the hip and back and his failure to complain of it.

He testified:

"Q. At that time you didn't claim that you sustained any injury other than the loss of the foot, did you—or the injury to the foot?

"A. I didn't know it at the time. I thought the suffering was caused from the foot. * * *

"Q. In your statement to Messrs. Holland & Cousins, you didn't say anything about any other injuries, other than the loss of the foot?

"A. No, sir; I was suffering pains in my foot all the time, and didn't know I was hurt anywhere else.

"Q. That was in January, 1927, I believe? After that, you went to see Messrs. Moss & Siess, in Lake Charles?

"A. Yes, sir.

"Q. You employed them to represent you, didn't you?

"A. Yes, sir; I talked to them about taking the case.

"Q. You didn't say anything to them about receiving any injury other than the injury to the foot?

"A. I told them I was suffering pain. I thought the pains I was suffering was from the foot. I didn't know.

"Q. You didn't know then that you sustained any other injuries other than the injury to the foot?

"A. No, sir.

"Q. And when they told you that you had been paid in full the amount due you for the loss of the foot, why you got some other lawyers to represent you—didn't you?

"A. Well, I didn't like the way they talked. I didn't know whether they represented the insurance company or not, and I got some other lawyers. Got Mr. Stevenson to get Mr. Stubbs."

In the light of the testimony of the physicians that plaintiff's back was injured, this explanation of plaintiff's failure to complain of that injury seems to us perfectly reasonable.

Plaintiff's testimony about suffering pain from his back is corroborated by that of Dr. Isidore Cohn, who said:

"Q. Now, when you had him to go through what is known in military parlance or language as the setting up exercises, he experienced considerable pain, did he not?

"A. He experienced considerable pain.

"Q. In his back?

"A. In his back; the lower part of his back. * * *

"Q. Now, doctor, the fact that he has suffered pain in his back, and still suffers pain in his back, suggests, of course, that that is due to some cause, does it not?

"A. If it can be proved or disproved that he has or has not pain.

"Q. Well, you had no reason to think that he was not sincere in his statement?

"A. No, sir; I would go so far as to tell you that I wrote in a letter. Shall I quote from my letter?

"A. Yes.

"A. I say: 'I do not think you are dealing with a case of compensation-itis.' More than that: I stated in that same letter, that the removal of the bone of the foot, this chief weight bearing bone, results in a disturbance in weight bearing, that is, from that side, and, that being the case, of course you can expect a great many pains to come from it. Any one who has ever had a flat foot knows how much pain an individual can have, and I might say that I speak with a great deal of feeling (exhibiting foot). I wear a built up shoe, because I have pains in the calves of my legs when I don't."

Dr. Henry Dasput testified:

"Q. In your examination of the patient, he was perfectly frank with you, as to his symptoms of pain?

"A. Yes; and he stated this: that when he walked, his pain was induced, and that rest relieved the back discomfort. * * *

"Q. You have no reason to doubt that the plaintiff was suffering and is suffering with pains in his back on the left side, and in his left hip?

"A. No reason whatever. * * *

"Q. Have you any reason to believe that the pain that the plaintiff complains of in his left back and hip is not real?

"A. I have already answered that question, that I thought he had the pain."

Dr. C. P. Gray testified:

"Q. Will you state, so the stenographer can get it, the result of your examination of the plaintiff?

"A. Mr. Diggs, on questioning, complained to me of pain in the lower part of his back, in the left hip and hip·joint, and the pains at times radiating down the left thigh; upon examination I found the foot that shows that it had been operated upon and presents the appearance of the whole or part of the astragalus bone removed. I noticed a decided diminution of the left leg as compared' with the right. In other words, there is an atrophy of the left leg. The left leg is smaller by measurement around the—well, for the purpose of plain English, around the calf of the leg; the left leg is one and a half inches smaller than the right. Above the knee, I didn't measure that, but there is a decided diminution in the size as compared with the right—shows a considerable atrophy of the limb taken as a whole. I find a disturbance of sensation in the left leg as compared with the right. This disturbance of sensation is due both to heat and cold. In other words, the sensation in the right limb is not as acute or as normal as it is in the uninjured limb. That applies, as I say, both as to heat and cold. Now I find a disturbance or abnormality of the reflexes of the left limb. In other words, the reflex is not normal. That I believe, concisely I believe, covers it. * * *

"Q. Now, doctor, from your knowledge and experience as a physician, and surgeon, what is your opinion as to the source of this pain that the plaintiff suffers from? Is it from his foot or elsewhere in the back and hip?

"A. No, sir; in my opinion it is what it termed as a—or comes from a sacro-iliac sprain. That is a sprain of the muscles of the back or the hip joint which has resulted in this traumatic neuritis.

"Q. Now doctor, would an injury to the foot, such as he suffered, cause a pain in his back?

"A. No, sir; I cannot see how that it could."

Dr. C. E. Phillips testified:

"Q. If * * * you should say that, about October, 1924, you made a physical examination of plaintiff, William C. Diggs, please state what you found his physical condition to be at that time.

"A. When I examined Mr. Diggs, in October, 1924, he was suffering pain in his left leg, and was complaining of pain in the back, and I found tenderness following the course of sciatic nerve and nerve trunks down to the ankle; but I did not make a thorough examination of the body. I think that the pain would have been alleviated if the leg had been properly replaced and united."

He further stated that he made another

physical examination of the plaintiff about three months after October, 1924, and then found the left leg to be atrophied both at calf and thigh, and the plaintiff was complaining of pain in the back and left leg, and that in his opinion the condition of plaintiff's leg and thigh could produce the pains he complained of. He further stated that, in his opinion, plaintiff was, at the time he gave his testimony, March 29, 1928, suffering from traumatic neuritis, and the ailment was the result of the injuries.

As to how he received his injury, plaintiff testified:

"Q. Now, what happened then?
"A. Well, sir, I was working on a ladder about fourteen feet high, and it slipped out from under me, and dropped me to the concrete floor. It tore this foot up. Seems like it drove the bone up in my hip like."

We are convinced from the evidence, as the trial judge was, that, in his fall from the ladder, plaintiff received injuries to his back that caused him permanent partial disability to do work of any reasonable character, entitling him, under clause (a) of subsection 1 of section 8, p. 74, of Act No. 43 of 1922, to receive from his employer 60 per centum of his wages during the continuance of his disability, not, however, beyond 300 weeks.

Defendant introduced in evidence two letters written by plaintiff to Dr. Cohn, and insists that they show plaintiff had entirely recovered from his injuries at that time. To our mind the letters do not evidence this. They only evidence a deep sense of gratitude on plaintiff's part, and gratitude is rarely an attribute of a malingerer.

In one of the letters, dated December 21, 1925, plaintiff says:

"I can walk now without the crutches. I put the crutches away two weeks ago. * * * Mr. Brown was sure tickled when I told him I would have a good foot again. * * * "

And in the other letter, dated May 21, 1926, he says:

"I am getting along fine. At least I hope I am. It will soon be time to take the brace off. * * * About how long should I wait after removing the brace before going to work? * * *"
To us these expressions indicate that he was hopeful that he had recovered rather than that he believed he had.

Plaintiff was injured July 22, 1924, and nearly three years later he was still undergoing treatment for the relief of his foot. This, to our mind, indicates that he sustained other injuries beyond those to the foot.

Our learned brother of the district court gave plaintiff judgment for compensation during disability for the remainder of the 300-week period, but at the reduced rate of $16.38 a week. This reduction clearly was not to the prejudice of the defendant. Plaintiff did not appeal nor answer defendant's appeal, and therefore the judgment cannot be altered in his favor.

A careful reading of the record convinces us that the judgment appealed from is correct, and accordingly it is affirmed.