No. 3934

Second Circuit

BRYANT v. WERNER CO., INC.

(November 7, 1930. Opinion and Decree.)

Thomas M. Comegys, Jr., and John B. Hussey, Jr., of Shreveport, attorneys for plaintiff, appellant.

John B. Files, of Shreveport, attorney for defendant, appellee.

ODOM, J. The plaintiff brought suit for compensation under the workmen's compensation act (Act No. 20 of 1914, as amended) and has appealed from a judgment rejecting his demands.

In July or August, 1929, defendant, a building contractor, was engaged in repairing a certain building in Shreveport and employed plaintiff as a common laborer. On the occasion of the alleged accident and injury, defendant was tearing up and removing a floor and plaintiff was picking up and removing the planks. While carrying some of these planks from one place to another, he stepped through an opening, causing him to fall, striking his right hip on a floor joist. The fall was witnessed by the foreman on the job, who immediately examined plaintiff with the view of ascertaining whether he had been injured. As there were nails sticking up from the floor joists, the foreman thought it probable that plaintiff had been injured by one of these nails. He found no evidence of that fact, however, except a slight abrasion or wound on the hip and he at once sent plaintiff to Dr. Slicer, the company's physician, for examination and told plaintiff at the time that if he was not seriously hurt to return to his work. This was in the forenoon, about 10:30 o'clock. Shortly after noon, plaintiff returned to his work and remained on the job that afternoon and the following day until noon. Plaintiff did not return to his work in the afternoon and neither the foreman nor anyone else connected with the defendant company heard anything from him for several months.

It is plaintiff's contention that the fall produced an injury to his hip or to the sacro-iliac joint which has rendered him totally disabled to perform work of a reasonable character.

Dr. Slicer, who examined plaintiff immediately after the fall, testified that plaintiff walked into his office and told him that he had fallen and had been injured. Dr. Slicer says that he stripped and examined him and found a brush burn and contused wound on the right hip; that he tested him for joint injuries or fractures and found nothing of the kind; that he regarded the injury as mild; that there was no swelling and that he informed plaintiff that there was nothing to be done except to treat the slight skin injury.

On the trial of the case plaintiff attempted to show that as a result of the fall and the injury to the exterior of his body, he was suffering from a sprain or strain of the hip or the iliac joint and that he had arthritis. In support of his theory he called two physicians, Dr. Hawkins and Dr. Caldwell. Dr. Hawkins made his examination about the middle of November, or nearly four months after the accident. He testified that plaintiff was complaining of soreness in the right hip and his back and that he examined an x-ray picture of those parts and that the picture showed no evidence of strain, dislocation or displacement of any of the joints, nor did it indicate any wasting of the tissues in those parts of the body. He testified that he found no symptoms of disease, suffering or disability, except what he called "subjective symptoms". That is, the complaints made by plaintiff. He manipulated

those parts of the body—the hip joint and the back—and said that he found some rigidity, but that plaintiff may have voluntarily resisted his manipulations. He found no objective symptoms of injury, suffering or disability.

His other physician, Dr. Caldwell, stated that he examined plaintiff on March 5, 1930, or approximately seven months after the accident, and that he found plaintiff walking with a limp and complaining of soreness in the right side and pain in the region of the right side of the iliac joint; that in making movements, plaintiff made them with caution and with an apparent attempt to protect the right side; that in getting up and down off the table or in turning and twisting about, he used some effort—an apparent effort to protect that side—that "the muscles on the right side were in spasm, this was constantly present, and was increased by any effort to stretch the limb or to press over the joint or press over the origin of the muscle, from those facts I deduce that the patient had a strain of the sacro-iliac joint on the right side."

He was asked if from the history of the case which he had from plaintiff, his present condition could be the result of the fall and he said:

"I think that is possible—I think in six or eight months after the injury occurred, it would result in such a thing as this, it is possible."

Dr. Caldwell stated that the x-ray pictures indicated no injury of the joints, no displacement and in 'fact the only evidence he had of any injury or disability was the statements made to him by plaintiff himself, and the fact that plaintiff in moving about was inclined to protect those parts of the body which he claimed were affected. His testimony is that arthritis or pain in those joints could have been produced by the injury but he could not say, of course, that they were nor could he say that as a matter of fact there were such conditions or that plaintiff was in fact suffering at the time he examined him. As to the pain in those joints, he necessarily had to rely upon plaintiff's statements.

The other four physicians who were called by defendant testified that plaintiff at the time of the trial was under no disability whatsoever. Dr. Slicer, who examined him immediately after the accident, said that there was no strain of any of the muscles or joints. The other physicians examined him several months after the accident and found no indications whatever that he was under any disability. Some of them testified that they made every known test and that they could discover no soreness or indications that plaintiff was suffering from arthritis or any other disease of the joints. Dr. Younger testified that he tested plaintiff's nerves and muscles with certain types of electric current by which he could tell whether either was injured and that he found no injury whatsoever. Dr. Edwards testified that on December 5th he made x-rays of plaintiff's hip and iliac joints and that he found them normal. He said, however, that an x-ray would not show inflammation of the cartilages but would show changes or displacements, if there had been any. A lay witness, Mr. Achee, went to where plaintiff lived, two days before the trial, and found him standing in the yard without a crutch and without support. He suggested to plaintiff that he go to a lawyer's office with him; whereupon plaintiff walked into the house and came back with a crutch. Plaintiff gives no account of himself from the time that he was injured in August until the time of the trial. He says he did not and could not work in the

meantime, but he produced no witnesses to corroborate his statement to that effect, except his landlord who said that he had not paid any rent during the time.

It is altogether possible that when plaintiff fell, the muscles around the hip joint were strained or sprained and possible also that there was a strain or sprain of the sacro-iliac joint. It is also possible, but not probable, that such injuries as plaintiff received produced arthritis in the region of the hip or iliac joint, and it has been repeatedly held by this and other courts that where injuries to any part of the body produce that condition or disease known as arthritis, the employee is entitled to compensation if the disease or condition render him unable to do manual labor of a reasonable character. But in all such cases the court found as a fact that there was arthritis and that its cause was traceable to the injury. In the case at bar, there is no proof that plaintiff is in fact suffering from arthritis or that the fall produced any strain or sprain of his hip or iliac joint. The two physicians called by plaintiff did not say that he is in fact thus afflicted. They testified that plaintiff complains of soreness in the hip and on the right side of the iliac joint and, assuming that his statements are true, they say that it is possible that he has arthritis and that such condition could have been brought on by the fall. But they say there are no objective symptoms of the disease or injury—in fact, no symptoms at all of the suffering or disease except what they refer to as "subjective symptoms"—that is, what they are told by plaintiff himself.

Counsel for plaintiff in their brief state that it has frequently been held by the courts of this state that a strain of the sacro-iliac joint sustained while in the course of employment is compensable under the Workmen's Compensation Law, and they cite Altman v. Louisiana Central Lumber Company, 3 La. App. 132; Taylor v. Southern Engineering Company, 13 La. App. 292, 125 So. 877, 878, and Digg v. Brown Paper Mill Company, 12 La. App. 244, 125 So. 632, all decided by this court. In the Altman case the court said:

"The testimony makes it perfectly plain that this plaintiff while at work as a laborer in the lumber yard of the defendant company was injured in such a manner as to render him unable to do any work of a reasonable character."

In the Taylor case, the court said that—

"The testimony of Drs. Scott and Glass of the defendant company that plaintiff had a sprained or strained back when they examined him at the company's request nine days after the accident and the report made by these doctors to the insurance company, of date January 16, 1928, wherein they say the injury was probably a sacro-iliac strain, and in reply to the question, 'Are symptoms due entirely to injury?', they answer 'yes', and the fact that plaintiff never had complained of his back before the accident, all convinces the court, not only that plaintiff complained of the injury received immediately after the accident, but is also convincing that the fall received by plaintiff did injure him, as alleged, and that he was totally incapacitated for work such as he was accustomed to do and the only kind of work he was competent to perform."

In the case of Arender v. Grant Timber & Mfg. Company, 9 La. App. 132, 119 So. 498, 499, it was held that in workmen's compensation cases the burden rests upon plaintiff to make out his case and that there "can be no recovery unless the evidence establishes with some degree of certainty that there was some connection between the accidental injury and the death or disability, as the case may be." Such has been the uniform ruling of this and

other courts. Plaintiff has failed to discharge the burden laid upon him; he has failed to establish with any degree of certainty that the fall on August 8, 1929, had any connection with his alleged disability when the case was tried in March, 1930.

For the reasons assigned, the judgment of the district court is affirmed, with costs in both courts.